IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

DAMON THOMPSON                                                                           PLAINTIFF

                    v.                          Civil No. 06-6023

CAPTAIN MELVIN STEED                                                          DEFENDANT


### REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

The Plaintiff, Damon Thompson, (hereinafter "Thompson" or "Plaintiff") filed this civil rights action pursuant to 42 U.S.C. § 1983.  He proceeds *pro se* and *in forma pauperis*.  Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and (3)(2005), the Honorable Jimm Larry Hendren, United States District Judge, referred this case to the undersigned for the purpose of making a report and recommendation.

The events at issue in this lawsuit occurred while Thompson was incarcerated at the Garland County Detention Facility (GCDF).  Thompson contends his constitutional rights were violated in the following ways while he was incarcerated there:  (1) he contends he was told if he continued to file grievances harassment charges would be filed against him; (2) he was put on lock down without Due Process; and (3) he was subjected to unconstitutional conditions of confinement.[1]

Defendant filed a summary judgment motion (Doc. 19).  Thompson filed a response (Doc. 22).  However, because I believed additional information was needed, I propounded a questionnaire

---

[1]Defendant construes the complaint (Doc. 1) and addendum (Doc. 9) to be asserting primarily an unconstitutional conditions of confinement claim).  *See Defendant's Brief* (Doc. 20) at page 4.

to Thompson (Doc. 23).  Thompson filed a timely response to the questionnaire (Doc. 24).  The summary judgment motion is now ready for decision.

## 1. Background

Thompson was booked into the Garland County Detention Facility (GCDF) on July 3, 2004. *Plaintiff's Response* (Doc. 24)(hereinafter *Resp.*) at ¶ 1; *Defendant's Exhibit* (hereinafter *Deft's Ex.*) A at page 1.  He was being held on charges of first degree murder, attempted capital murder, and failure to pay child support.  *Resp.* at ¶ 2.  He was being held solely on the pending criminal charges. *Id.* at ¶ 3.  He remained incarcerated at the GCDF until August 20, 2006, when he was released.  *Id.* at ¶ 4.

During all times relevant to the complaint, Captain Mel Steed was employed as a detention facility officer at the GCDF.  *Resp.* at ¶ 5(A).  Steed is the jail administrator at the GCDF.  *Id.* at ¶ 5(B).

According to Steed, the facility policy was to provide a safe environment for all persons detained there.  *Deft's Ex.* 1 at ¶ 5.  If something was in need of repair, the Garland County Maintenance Department was notified and all reasonable and necessary repairs were made.  *Id.* Thompson, however, contends Garland County moves at its own pace.  *Resp.* at ¶ 6.

If an inmate has a problem or complaint, they are instructed to complete a grievance form and a detention facility employee will review the grievance form and attempt to accommodate any reasonable request of an inmate.  *Defts' Ex.* 1 at ¶ 6.  Thompson agrees inmates are given the forms to complete.  *Resp.* at ¶ 8.  However, he states detention employees sometimes discard the forms, lose them, or don't even take them from the inmates.  *Id.*

Thompson submitted numerous grievances to detention facility personnel. *Resp.* at ¶ 9(A). Thomson maintains only those grievances detention personnel wanted to deal with were handled. *Id.* at ¶ 9(C).

Thompson denies he was provided adequate meals. *Resp.* at ¶ 10(A). He asserts his meals were brought to him with bugs. *Id.* He had adequate clothing. *Id.* at ¶ 10(B). He indicates he was not taken out on the yard on a regular basis for exercise. *Id.* at ¶ 10(C). When he was on lock-down, which was "many times" he indicates he was not allowed to shower. *Id.* at ¶ 10(D). He had a mat and blanket to sleep with. *Id.* at ¶ 10(E). He maintains "a lot of the mail" he sent out and that was sent to him was not received. *Id.* at ¶ 10(F). He received medical care when "they had the time or if they were not understaffed." *Id.* at ¶ 10(G).

On March 11, 2006, Thompson submitted a request stating that he needed something for pain until the nurse got there on Monday. *Resp.* at ¶ 11(A). He noted that the right side of his face and his throat were swelling up. *Id.* In response, he was told that he would be started on a cold set up that day. *Id.* at ¶ 11(B).

On March 29th Deputies Dunn and Strickland reported that Thompson, Rodney Pickney, and Gerald Dunn were involved in extorting commissary from fellow inmates. *Resp.* at ¶ 12(A). Thompson was charged with a disciplinary, found guilty, and given fifteen days lock-down and loss of privileges. *Id.* at ¶ 12(B).

He submitted a grievance on March 30th complaining he was being punished for something he didn't do. *Resp.* at ¶ 13. He submitted another grievance on March 31st complaining again he was being punished for something he didn't do. *Id.* at ¶ 14(A). Steed responded that the disciplinary

-3-

board found Thompson guilty and he would not respond to any grievances on this subject–"it is final." *Id.* at ¶ 14(B).

On April 1st Thompson submitted another grievance stating he had been locked down for something he didn't do. *Resp.* at ¶ 15(A).  In response, Steed referred Thompson to his response to Thompson's grievance of March 31st.  *Id.* at ¶ 15(B).

On April 2nd Thompson submitted a grievance stating that he had been told that starting on the fourth day of lock-down he would be let out for an hour to clean and shower.  *Resp.* at ¶ 16(A). In response, he was told the rules change all the time.  *Id.* at ¶ 16(B).  At the time, he was told the rules were that after three days on lock-down he got a shower and then on his seventh day you got an hour out.  *Id.*

On April 3rd Thompson submitted a grievance stating he never was given the opportunity to call witnesses at the disciplinary hearing.  *Resp.* at  ¶ 17.  He stated that the complaining inmates had lied to the disciplinary board.  *Id.*  He also stated they had spoken to every other person involved other than him.  *Id.*

On April 4th Thompson submitted another grievance stating that his being placed on lock-down for extortion violated his rights.   *Resp.* at ¶ 18(A).  He asserted that no one did an investigation.  *Id.*  He maintained they just took the complaint and locked him and three other inmates down.  *Id.*  He maintained the inmates who complained were just trying to get moved back to a bigger block and lied about being forced to give away food and commissary.  *Id.*  Thompson stated he filed an appeal to the jail administrator and stated all the facts and also filed grievance forms about the matter.  *Id.* at ¶ 18(B).  That morning, Thompson indicated he received a reply from Sgt. Radley that stated his complaints were not legitimate and that if he kept writing grievances

harassment charges would be considered against him.  *Id.* at ¶ 18(C).  He then wrote a grievance to Chief Holt because he felt the way he was being treated was wrong and he stated he did not want to involve his family or lawyer.  *Id.*  Lt. McMurrian responded.  *Id.* at ¶ 18(D).  She stated the fact of the matter was Thompson was determined to be guilty of a less severe disciplinary than the other two inmates.  *Id.*  She also stated that Sgt. Radley was correct and Thompson was bordering on harassment.  *Id.* She stated that any further grievances on this issue that he filed would not be answered.  *Id.*

On April 7th Deputy Dunn reported that Thompson had fallen in his cell on some water. *Resp.* at ¶ 19.  Dunn suspected he had deliberately poured the water on the cell floor.  *Id.*  Thompson was not injured.  *Id.*

On April 23rd Thompson asked Deputy Henry if he could go up front to use the phone to call his family because he could not call them collect.  *Resp.* at ¶ 20.  Henry responded that there was too much going on with visitation.  *Id.*

On April 27th Thompson submitted a grievance wanting to know why the whole pod was put on lock-down because of the actions of two inmates.  *Resp.* at ¶ 21.  In response, Steed talked to the officers involved.  *Defts' Ex.* B at page 18.  Thompson indicates they remained on lock-down.  *Resp.* at ¶ 21.

On May 19th Thompson submitted a grievance stating that after a search he had some personal belongings, two dictionaries, some legal paperwork, and some calendars, come up missing. *Resp.* at ¶ 22(A).  He also mentioned that over the past two years he had whites, legal papers, pictures, and other items taken from him and allegedly placed in his property.  *Id.*  However, he stated the items were not in his property.  *Id.*  In response, he was told they were done playing his

games.  *Id.* at ¶ 22(B).  Lt. McMurrian stated this was the first she had heard of any paperwork missing.  *Id.*  She noted the officers said only contraband was taken from Thompson's cell.  *Id.*

On May 20th Thompson was found guilty of intimidation of staff and given ten days lock-down and loss of privileges.  *Resp.* at ¶ 32.  On May 22nd Thompson submitted a grievance about there being spiders in his cell.  *Resp.* at ¶ 23(A).  In response, he was told that Terminix would come out and spray.  *Defts' Ex.* B at page 20.

On May 26th Thompson submitted a note to Nurse Harmon.  *Resp.* at ¶ 24(A).  He noted that he refused his medications once when they were sent to him crushed.  *Id.*  He stated he was having headaches.  *Id.*  He asked that his blood pressure be checked.  *Id.*  He noted the nurse kept talking about who was responsible.  *Id.*  In response, Nurse Harmon wrote that all he was saying was if "you refuse your Meds then we (jail) are not responsible for your B/P."  *Id.* at ¶ 24(B).  He also noted the order for daily B/P, daily temp. was months ago.  *Id.*

On May 28th Thompson submitted a grievance stating that he had a problem using razors because they caused him to break out.  *Resp.* at ¶ 25(A).  He stated he had a "script" to use clippers.  *Id.*  In response, Lt. McMurrian stated she discontinued that order because it was causing turmoil among the inmates and deputies.  *Defts' Ex.* B at page 23.  She stated Thompson should know one person cannot have special favors.  *Id.*  Additionally, she stated they had to have deputies pulled off other inmates to allow him to use the clippers.  *Id.*  Finally, she said the clippers could be a safety hazard.  *Id.*  Thompson contends he was told the order was discontinued by the captain.  *Resp.* at ¶ 25(B).

Thompson asked again about being able to use the clippers on June 9th and was told that the issue had been discussed with the nurse and Dr. Hale and the order for the clippers had been

discontinued. *Resp.* at ¶ 25(C). On August 5th Steed wrote Thompson stating that Nurse Harmon and Dr. Hale stated he did not need to use the beard trimming razor. *Id.* at ¶ 25(D).

Thompson wrote Lt. McMurrian about being moved from 1-D back to 1-B. *Resp.* at ¶ 26(A). Thompson indicates this is a maximum security cell block. *Addendum* (Doc. 9) at ¶ 3. He asked if she put him in 1-B. *Resp.* at ¶ 26(A). He asked her not to punish him for something he didn't do. *Id.* Lt. McMurrian responded on June 5th. *Id.* at ¶ 26(B). She stated that she didn't know why Thompson was moved back to 1-B. *Id.* However, she stated any officer or supervisor could move any inmate at any given time. *Id.* She stated she had been overly fair with regard to the special visits that he had been allowed even when he had lost his privileges. *Id.*

Thompson submitted an undated letter to Sheriff Larry Sanders that complains about the way things are handled at the jail. *Resp.* at ¶ 27. He maintained he was being unfairly treated and was moved to "1-B max security" on June 2nd because a detainee in the cell with him failed to comply with an order from Shelby. *Id.* He stated anyone could say he did anything and he was punished without anyone checking to see if the statement was true or false. *Id.*

Thompson submitted a note to Steed dated June 8th asking if he could go to a funeral service for his aunt. *Resp.* at ¶ 28(A). He also asked to be able to use the phone in front to be able to call his Mother. *Id.* In response, he was told the Sheriff's Department would not pay for long distance phone calls. *Id.* at ¶ 28(B). He was also told that no one detained at the GCDF could go to funerals. *Id.*

On August 21st Thompson submitted a note to Nurse Harmon asking to know how many pills he had in his prescriptions. *Resp.* at ¶ 29(A). He said that if he didn't take his medications he couldn't possibly be running out of them. *Id.* He also stated he wanted to know before the

prescriptions were refilled. *Id.* In response, he was told the HCTZ prescription had 26 ½ pills out of 30 and the Enalapril prescription had "30 out of." *Defts' Ex.* B at page 31. He was also told he was not being over charged. *Id.* He was asked if he wanted to discontinue his medication at 9:00 a.m. *Id.*

## 2. Summary Judgment Standard

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986), the record "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *National Bank of Commerce v. Dow Chemical Co.*, 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." *National Bank*, 165 F.3d at 607 (*citing Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)). "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id.* (*citing Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)).

## 3. Discussion

Defendant has now moved for summary judgment. Defendant denies he engaged in any conduct that resulted in Thompson's constitutional rights being violated. First, Defendant contends

Thompson's grievances were properly responded to and there is no evidence of retaliation.  Second, contends there is no evidence Thompson was improperly punished by being placed on lock-down. Finally, Defendant contends Thompson was not subjected to unconstitutional conditions of confinement.

### A.  Retaliation Claim---Threatened Harassment Charges

In order to prevail on a First Amendment retaliation claim, Thompson must establish that: "he engaged in protected activity and that defendant[], to retaliate for the protected activity, took adverse action against [him] that would chill a person of ordinary firmness from engaging in that activity." *Lewis v. Jacks*, 486 F.3d 1025, 1028 (8th Cir. 2007)(*citing Revels v. Vincenz,* 382 F.3d 870, 876 (8th Cir.2004), *cert. denied,* 546 U.S. 860, 126 S. Ct. 371, 163 L. Ed. 2d 140 (2005)). "The filing of a prison grievance, like the filing of an inmate lawsuit, is protected First Amendment activity." *Lewis*, 486 F.3d at 1029 (citations omitted).

Courts have recognized that prisoners will inevitability take exception to the decisions  and that claims of retaliation may readily be fabricated.  For this reason, it has been noted that claims of retaliation are to be examined with skepticism and care.  *See e.g., Flaherty v. Coughlin*, 713 F.2d 10 (2d Cir. 1983).  In this case, I believe there are no genuine issues of material fact as to whether Defendant retaliated against Thompson because he filed grievances regarding his disciplinary lock-down for "extorting commissary" from fellow inmates.  *See Resp.* at ¶ 12(A).    Thompson was charged with a disciplinary violation, found guilty, and given fifteen days lock-down.  *See Resp.* at ¶ 12(B). He filed grievances on March 30th and March 31st following his conviction on the disciplinary violation.  *See Resp.* at ¶¶ 13 & 14(A).  Steed responded that the disciplinary board had found Thompson guilty and that he would not respond to any grievances on the subject–"it is final."

-9-

*See Resp.* at ¶ 14(B).   Despite Steed's response, Thompson filed another grievance on April 1st.  *See Response* at ¶ 15(A).  Steed referred Thompson to his March 31st response.  *See Resp.* at ¶ 15(B).  Thompson filed grievances on April 3rd and April 4th.  *See Resp.* at ¶¶ 17 & 18(B).

It was after his April 4th grievance Thompson was told by Sgt. Radley that if he filed any more grievances about the "extortion" issue harassment charges would be considered.  *See Resp.* at 18(C); *Defts' Ex.* B at page 14.  Thompson then wrote a grievance about this response to Chief Holt.  *See Resp.* at ¶ 18(C).  Lt. McMurrian responded to this grievance.  *See Resp.* at ¶ 18(D); *Deft's Ex.* B at page 14.  She indicated Radley was correct and Thompson was bordering on harassment.  *Id.* She indicated no further grievances that Thompson submitted on this issue would be answered.  *Id.*

There is no indication Steed was involved in responding to any grievances after the ones submitted by Thompson on March 31st and April 1st.  Further, Thompson continued to submit grievances on numerous subjects after April 4th.  Thompson was not disciplined for filing these grievances.  Instead, he was merely told no more grievances on the extortion issue would be addressed.  *See Resp.* at ¶ 34 (Thompson concedes it was only when he submitted repeated grievances on the subjected of his being found guilty of extortion that he was told this issued had been dealt with and his future grievances on this same subject would not be responded to).  Refusing to answer multiple grievances on the same issue is not retaliation.

In *Kaufman v. Karlen*, No. 06-C-205-C, 2007 WL 1821098, *23 (W.D. Wis. June 21, 2007), the court faced a similar issue.  There the court noted that "[p]rison officials' hands are not tied entirely when it comes to the filing of inmate grievances.  Prison officials are free to restrict inmates' ability to file grievances to the extent that the exercise of the right impedes the efficient administration of the prison." *Kaufman v. Karlen*, No. 06-C-205-C, 2007 WL 1821098, *23 (W.D.

-10-

Wis. June 21, 2007)(*citing Bruise v. Hudkins*, 584 F.2d 223, 231 (7th Cir. 1978)).  In that case, the prison policy prohibited inmates from filing multiple grievances on the same topic.  *Id.*  Prison officials responded to the plaintiff's first four grievances on the same topic, but when plaintiff filed his fifth grievance within fifteen days on the same topic, he was issued a disciplinary report for violating the prison's policies and procedures.  *Id.*  Plaintiff then brought a retaliation claim.  *Id.* at *24.  The court noted that it was "only when his filing became abusive that he was disciplined for his repeated filing of inmate complaints on the same subject.  Such discipline does not constitute retaliation."  *Id.*

### B.  Disciplinary Lock-down

Under the Due Process Clause of the United States Constitution, a pretrial detainee may not be punished prior to an adjudication of guilt.  *See Bell v. Wolfish*, 441 U.S. 520, 535, 99 S. Ct. 1861, 60 L. Ed. 2d 447 (1979).  "We [therefore] begin with the fundamental principle that a person held in confinement as a pretrial detainee may not be subjected to any form of punishment for the crime for which he is charged."  *Rapier v. Harris*, 172 F.3d 999, 1002 (7th Cir. 1999).  *See also Martinez v. Turner*, 977 F.2d 421, 423 (8th Cir. 1992)("Pretrial detainees are presumed innocent and may not be punished.").  "However, not every disability imposed during pretrial detention amounts to 'punishment' in the constitutional sense."  *Smith v. Copeland*, 87 F.3d 265, 268 (8th Cir. 1996).

"Once the Government has exercised its conceded authority to detain a person pending trial, it obviously is entitled to employ devices that are calculated to effectuate this detention."  *Bell*, 441 U.S. at 537.  In determining whether a particular restriction constitutes a permissible restriction or amounts to impermissible punishment, the court first asks "whether the restriction is based upon an express intent to inflict punishment."  *Valdez v. Rosenbaum*, 302 F.3d 1039, 1045 (9th Cir.

-11-

2002)(citations omitted).  If "there is no indication of such an express intent," the court next considers "whether punitive intent can be inferred from the nature of the restriction." *Valdez*, 302 F.3d at 1045.

In this regard, the Supreme Court in *Bell* held that "if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to 'punishment.'" *Bell*, 441 U.S. at 539.  "An action may be reasonably related to a legitimate governmental purpose if an alternative purpose to which the act may rationally be connected is assignable for it and the action does not appear excessive in relation to the alternative purpose assigned." *Robles v. Prince George's County, Maryland*, 302 F.3d 262, 269 (4th Cir. 2002)(internal citations and punctuation omitted).

In *Higgs v. Carver*, 286 F.3d 437 (7th Cir. 2002), the Seventh Circuit stated:

> A pretrial detainee cannot be placed in segregation as a punishment for a disciplinary infraction without notice and an opportunity to be heard; due process requires no less. But no process is required if he is placed in segregation not as punishment but for managerial reasons.  Suppose for example that the only vacant cell left in the jail was in the segregation ward when a new prisoner arrived; placing him in that cell would be a managerial decision.  Or suppose, . . . that a prisoner was placed under particularly restrictive conditions of confinement at the jail because he was considered a suicide risk.  Again, no hearing would be required.  Ditto if he was placed in segregation to protect himself from other prisoners, or to protect jail staff from his violent propensities.  As long as the purpose was indeed preventive rather than a punitive one, he would not be entitled to notice and a hearing. . . . In none of these cases would a hearing be practicable, or even useful, because managerial decisions do not have the character of rulings applying legal standards to facts, the kind of rulings for which adjudicative hearings are designed.

*Id.*, 286 F.3d at 438.  *See Martinez v. Turner*, 977 F.2d 421, 423 (8th Cir. 1992)("Requiring a pretrial detainee to work or be placed in administrative segregation is punishment. . . .  Regardless of

whether the detentions are classified as 'administrative,' if a pre-trial detainee must remain in a lock-up area if he does not work, the detention amounts to punishment.").

Thompson takes issue with:  his lock-down March 29th; the entire pod being locked down on April 27th; his lock-down on May 20th; and his being moved to cell block 1-B on June 2nd.  I believe there are genuine issues of fact that preclude summary judgment in Defendant's favor with respect to the lock-down on March 29th.  Prior to Thompson's being placed in lock-down on March 29, 2006, he was given notice of a disciplinary violation and found guilty by a disciplinary board.  *See Resp.* at ¶¶ 12(B), 14(B), ¶ 33.  However, Thompson asserts he was not given the opportunity to call witnesses.  *Resp.* at ¶ 17.  He also maintains he was not spoken to by the disciplinary board.  *Id.*  He indicates he was only allowed to "plea."  *Defts' Ex.* B at page 8.

When Thompson filed a grievance complaining that he was only given an opportunity to tell the disciplinary board how he pled and then they left and they never called any witnesses or allowed him a chance to say anything on his behalf, Steed merely responded that he had been found guilty by the board and that was final.  *Defts' Ex.* B at page 8.  Thompson indicated there were three inmates who would state that he had not taken anything.  *Id.*  Thus, on the record before the court, with respect to the March 29th extortion disciplinary, I believe there are genuine issues of material fact as to whether Thompson's Due Process rights were violated.

On April 27th, the entire pod Thompson was locked down for a period of time.  *See Resp.* at ¶ 21; *Defts' Ex.* B at page 18.  Thompson was not singled out for punishment.

On May 20th when he was placed on lock-down he was given a disciplinary and found guilty of intimidation of staff and given ten days lock-down and loss of privileges.  *See Resp.* at ¶ 32.  The

-13-

record of the disciplinary board hearing contains a statement from Thompson.  *See Defts' Ex.* C at page 1.  Witnesses were called.  *Id.*

On June 2nd Thompson was moved from cell block 1-D to cell block 1-B after a letter was received from fellow inmates complaining that Thompson was a leader in the cell block gang and making threats towards whites.  *Defts' Ex.* D.  The decision to move him was made by Deputy Shelby and Sgt. Reed.  *Defts' Ex.* D.  Thompson maintains this move was punishment for something he did not do.  *Defts' Ex.* B at page 24.

With respect to the remaining lock-downs and the movement to cell block 1-B, I find Defendant is entitled to summary judgment.  First, there is no indication Steed was personally involved in any of these decisions to place Thompson on administrative segregation or lock-down or in the decision to move him to cell block 1-B.  "Liability under section 1983 requires a causal link to, and direct responsibility for, the deprivation of rights."  *See Clemmons v. Armontrout*, 477 F.3d 962, 967 (8th Cir. 2007)(internal quotation marks and citation omitted).

Second, prior to his placement in administrative segregation on May 20th for disciplinary reasons, Thompson was given a hearing, found guilty, and a punishment determined.  Although, Thompson does not agree with the findings of the disciplinary board, this fact does not violate Due Process.

Third, with respect his placement in cell block 1-B, Thompson was moved there in response to concerns for the safety and security of the facility.  Maintaining safety and internal order within a detention center are permissible nonpunitive objectives.  *Bell v. Wolfish*, 441 U.S. 520, 538-40, 546, 99 S. Ct. 1861, 60 L. Ed. 2d 447 (1979).

-14-

### C.  Conditions of Confinement

The Court of Appeals for the Eighth Circuit has adopted the same legal standard for detainees that applies to convicted inmates.  *See Butler v. Fletcher*, 465 F.3d 340, 344 (8th Cir. 2006)(adopting the Eighth Amendment's deliberate indifference standard as the "appropriate standard of culpability for all claims that prison officials failed to provide pretrial detainees with adequate food, clothing, shelter, medical care and reasonable safety."

"[W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." *County of Sacramento v. Lewis*, 523 U.S. 833, 118 S. Ct. 1708, 1719, 140 L. Ed. 2d 1043 (1998)(citation omitted).  The Eighth Amendment to the United States Constitution prohibits the imposition of cruel and unusual punishment.  U.S. Const. amend. VIII.  The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones. *Farmer v. Brennan*, 511 U.S. 825, 832, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994).  The Cruel and Unusual Punishment Clause of the Eighth Amendment forbids conditions that involve the "wanton and unnecessary infliction of pain," or are "grossly disproportionate to the severity of the crime." *Rhodes v. Chapman*, 452 U.S. 337, 347, 101 S. Ct. 2392, 69 L. Ed. 2d 59 (1981).

"A prisoner alleging an Eighth Amendment violation must prove both an objective and subjective element. *Revels v. Vincenz*, 382 F.3d 870, 875 (8th Cir. 2004)(*citing Wilson v. Seiter*, 501 U.S. 294, 298, 111 S. Ct. 2321, 115 L. Ed. 2d 271 (1991)).  "The defendant's conduct must objectively rise to the level of a constitutional violation by depriving the plaintiff of the minimal civilized measure of life's necessities.  The defendant's conduct must also reflect a subjective state of mind evincing deliberate indifference to the health or safety of the prisoner" *Revels*, 382 F.3d at

-15-

875 (citations and internal quotation marks omitted).  Deliberate indifference is established when the Plaintiff shows "the defendant was substantially aware of but disregarded an excessive risk to inmate health or safety." *Revels,* 382 F.3d at 875.  The standards against which a court measures prison conditions are "the evolving standards of decency that mark the progress of a maturing society." *Estelle v. Gamble*, 429 U.S. 97, 102, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976).

Thompson generally complains about the following conditions: inadequate response to requests for medical care, (Doc. 22) at page 1; being treated unfairly by deputies and threatened because of the charges against him, *Id.*; being exposed to silver fish, spiders, lice and fire ants, *Id.*; being subjected to offensive racial remarks and gestures, *Id.*; served food with metal pieces in it and some of the food had bugs and mold on it, *Id.* at page 2; and subjected to cold temperatures and a cell with a floor flooded with water from the toilet, *Id.*

Thompson had adequate clothing. *Resp.* at ¶ 10(B).  He indicates he spent most of the time assigned to cell block 1-B the maximum security cell block and was not taken out on the yard on a regular basis.  *Id.* at ¶ 10(C).  *See Phillips v.* Norris, 320 F.3d 844, 847 (8th Cir. 2003)(thirty-seven days without being allowed to exercise did not constitute an atypical and significant hardship in the context of normal prison life); *Delaney v. DeTella*, 256 F.3d 679, 684 (7th Cir. 2001)("short-term denials of exercise may be inevitable in the prison context."); *Leonard v. Norris*, 797 F.2d 683, 685 (8th Cir. 1986)(fifteen days of no out-of-cell exercise not cruel and unusual punishment); *Wishon v. Gammon*, 978 F.2d 446, 449 (8th Cir. 1992)(45 minute out-of-cell recreation time per week did not violate the Eighth Amendment rights of inmate in protective custody).  Thompson's allegations that he was treated unfairly, verbally abused, and threatened simply do not state claims of constitutional dimension.   "Verbal threats do not constitute a constitutional violation." *Martin*

-16-

*v. Sargent*, 780 F.2d 1334, 1339 (8th Cir. 1985).  Similarly, taunts, name calling, and the use of offensive language does not state a claim of constitutional dimension.  *McDowell v. Jones*, 990 F.2d 433, 434 (8th Cir. 1993)(inmate's claims of general harassment and of verbal harassment were not actionable under § 1983); *O'Donnell v. Thomas*, 826 F.2d 788, 790 (8th Cir. 1987)(verbal threats and abuse by jail officials did not rise to the level of a constitutional violation); *Martin*, 780 F.2d at 1338-1339 (being called an obscene name and threatened with adverse consequences unless he cut his hair and shaved does not state a claim of constitutional dimension);  *Black Spotted Horse v. Else*, 767 F.2d 516, 517 (8th Cir. 1985)(use of racially offensive language in dealing with a prisoner does not, by itself, state a claim).  *Cf. Burton v. Livingston*, 791 F.2d 97, 100-101 (8th Cir. 1986)(A claim was stated where the prisoner alleged "that a prison guard, without provocation, and for the apparent purpose of retaliating against the prisoner's exercise of his rights in petitioning a federal court for redress, terrorized him with threats of death.").

With the exception of the times he was on lock-down, he was allowed to shower regularly. *Resp.* at ¶ 10(D).  When on lock-down, there were periods of time when he could not shower.  *See e.g., Resp.* at ¶ 16 (A)(after three days on lock-down inmate got a shower and after the seventh day the inmate got an hour out).  *See e.g., McCoy v. Goord*, 255 F. Supp. 2d 233, 260 (S.D.N.Y. 2003)("a two week suspension of shower privileges does not suffice as a denial of 'basic hygiene needs'").  He does not allege he had no access to basic hygiene items such as soap and water between showers.

He had a mat and blanket to sleep with.  *Resp.* at ¶ 10(E).  He had access to medical care, although, he did not believe he received care as promptly as he should have.  *Id.* at ¶ 10(G), ¶ 11, ¶

-17-

24.  In response to his grievances about spiders in his cell, he was told Terminix would come out and spray.  *Defts' Ex.* B at page 20.

The Supreme Court has stated that "[n]othing so amorphous as 'overall conditions' can rise to the level of cruel and unusual punishment when no specific deprivation of a single human need exists."  *Wilson v. Seiter*, 501 U.S. 294, 305, 111 S. Ct. 2321, 115 L. Ed. 2d 271 (1991).  However, "[c]onditions of confinement may establish an Eighth Amendment violation 'in combination' when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise–for example, a low cell temperature at night combined with a failure to issue blankets."  *Gates v. Cook*, 376 F.3d 323, 333 (5th Cir. 2004)(*citing Wilson*, 501 U.S. at 304).  The standards against which a court measures prison conditions are "the evolving standards of decency that mark the progress of a maturing society."  *Estelle v. Gamble*, 429 U.S. 97, 102, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976).

With respect to the bug problem in his cell, there is only one grievance in evidence regarding this situation and detention center personnel responded by stating that Steed would be notified and Terminix would come out and spray.  *Defts' Ex.* B at page 20.  There is no indication the bug problem was so serious as to cause a safety or health problem.

Thompson also maintains he was served some food with metal objects in it, or bugs and mold in it.  *See* Doc. 20 at page 2; *Resp.* at ¶ 10(A).  The Eighth Amendment's prohibition against cruel and unusual punishment require prisoners to be provided with meals nutritionally adequate to maintain health.  *See e.g., Keenan v. Hall*, 83 F.3d 1083, 1091 (9th Cir. 1996); *Campbell v. Cauthron*, 623 F.2d 503, 508 (8th Cir. 1980)(prisoners are guaranteed a reasonably adequate diet). Thompson has presented no evidence suggesting he was routinely served food contaminated with

-18-

foreign substances, food that was nutritionally inadequate, or food that was prepared in a manner presenting an immediate danger to his health. *See e.g., Wishon v. Gammon*, 978 F.2d 446, 449 (8th Cir. 1992). *LeMaire v. Maass*, 12 F.3d 1444, 1456 (9th Cir. 1993)("The fact that the food occasionally contains foreign objects . . . , while unpleasant, does not amount to a constitutional violation."); *Hamm v. DeKalb County*, 774 F.2d 1567, 1575 (11th Cir. 1985)(same); *Islam v. Jackson*, 782 F. Supp. 1111, 1114-15 (E.D. Virginia 1992)(serving one meal contaminated with maggots and meals under unsanitary conditions for thirteen days was not cruel and unusual punishment, even though inmate suffered symptoms of food poisoning on one occasion). Moreover, Thompson has not alleged he suffered any physical injury as a result of the diet he received.

I do not believe these conditions  in combination, or alone, create a genuine issue of fact as to whether the Defendant violated the Eighth Amendment.  In short, I do not believe there is a genuine issue of fact as to whether Thompson was deprived of a single, identifiable human need such as food, warmth, or exercise. *See e.g., Tokar v. Armontrout*, 97 F.3d 1078, 1082 (8th Cir. 1996).

## 4. Conclusion

For the reasons stated, I  recommend that the Defendant's motion for summary judgment (Doc. 19) be granted in part and denied in part.  Specifically, I recommend the motion be granted on all claims except Thompson's claim that he was denied Due Process when he was placed on lock-down on March 29, 2006.

**The parties have ten days from receipt of the report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections**

-19-

may result in waiver of the right to appeal questions of fact.  The parties are reminded that

objections must be both timely and specific to trigger de novo review by the district court.

      **DATED** this 21st **day of February 2008.**


                             /s/ Barry A. Bryant
                             HON. BARRY A. BRYANT
                             UNITED STATES MAGISTRATE JUDGE